UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Katrice Tipton, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:21-cv-417 ) ) |
| vs. | ) ) ) |
| Carrington Mortgage Services, LLC, | ) ) ) |
| Defendant. | ) ) |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Katrice Tipton, individually and on behalf of all others similarly situated, by and through her attorneys Brown, LLC and Macey Swanson Hicks & Sauer, hereby brings this Collective and Class Action Complaint against Defendant Carrington Mortgage Services, LLC and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff Katrice Tipton individually and on behalf of all similarly situated persons employed by Defendant Carrington Mortgage Services, LLC, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and Indiana Code § 22-2-5-1.

2. Defendant is a financial services company that handles single-family residential real estate transactions, including investment in U.S. real estate and mortgage markets, loan origination and servicing, asset management and property preservation, real estate sales and rental, and title and escrow services.

3.  Plaintiff and the members of the putative collective and class were employed by Defendant as hourly-paid, non-exempt customer service representatives ("CSRs"), and were responsible for handling inbound telephone calls from Defendant's clients and customers.

4.  The U.S. Department of Labor recognizes that customer support jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert customer support employees to some of the abuses which are prevalent in the industry.

5.  One of those abuses, which are at issue in this case, is the employer's refusal to pay CSRs for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

6.  More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

7.  Defendant failed to pay CSRs for their time spent starting up their computers, logging into required systems and applications, and reviewing work-related e-mails and other information, before their shifts and upon returning from their meal breaks, as well as time spent closing/shutting down their computer programs and systems after the end of their scheduled shifts, including time worked in excess of forty (40) hours in a workweek.

8.  In addition, Plaintiff and other CSRs were victims of Defendant's common policy of failing to incorporate their non-base compensation (such as "Monthly Bonuses" and "Lending Division" bonuses) into their regular rates of pay, for purposes of calculating their hourly overtime

rates. As a result, there were many weeks throughout the statutory period in which Plaintiff and other CSRs received an hourly rate for overtime hours of less than "one and one-half times the[ir] regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee").

9. Plaintiff seeks unpaid overtime wages and liquidated damages pursuant to the FLSA on behalf of herself and the "FLSA Collective," defined as: *all current and former CSRs who worked for Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment*. *See* 29 U.S.C. §§ 207(a)(1); 216(b).

10. Plaintiff seeks unpaid straight-time wages and liquidated damages pursuant to Indiana Code § 22-2-5-1 on behalf of herself and the "Rule 23 Indiana Class," defined as: *all current and former CSRs who worked for Defendant in Indiana at any time within the two years preceding the commencement of this action and the date of judgment*.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

12. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367 because that claim derives from same nucleus of operative facts as Plaintiff's federal claim.

13. The court has personal jurisdiction over Defendant because it has systematic and continuous contacts with the State of Indiana, and Plaintiff's claims arise out of those contacts.

14. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## PARTIES

15. Plaintiff Katrice Tipton is a resident of Marion County Indiana, and has been employed by Defendant as an hourly CSR from approximately December 2015 through the present. For most of her employment, she worked at Defendant's call center in Westfield, Indiana, but has been working from home since March 2020 due to the COVID-19 pandemic.

16. Plaintiff Tipton has signed a consent form to join this lawsuit. *See* Exhibit 1.

17. Defendant Carrington Mortgage Services, LLC is a limited liability company incorporated in Delaware and headquartered in Anaheim, California.

18. Defendant's registered agent is for service in Indiana is C T Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

## FACTUAL ALLEGATIONS

19. Defendant employed CSRs to handle inbound telephone calls from Defendant's clients and customers.

20. Defendant classified CSRs as non-exempt employees and paid them on an hourly basis without any guaranteed, predetermined amount of pay per week.

21. In order to perform their jobs, CSRs were required to start up and log in to various computer systems and applications that were necessary for them to retrieve and process information during calls.

22. CSRs performed these actves before their shifts and/or upon returning from their meal breaks.

23. However, CSRs were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete, meaning that they performed work for which they were not compensated.

24. Defendant failed to pay CSRs for time spent logging into required systems and applications before their shifts and upon returning from their unpaid meal breaks.

25. Defendant also failed to pay CSRs for time spent closing/shutting down their computer programs and systems after the end of their scheduled shifts.

26. The off-the-clock time CSRs spent starting up and logging into required systems and applications, and closing/shutting down their computer programs and systems directly benefitted Defendant.

27. This start-up/log-in process, and the closing/shutting down process, were essential parts of CSRs' job responsibilities.

28. At all relevant times, Defendant controlled CSRs' work schedule, duties, protocols, applications, assignments and employment conditions.

29. Despite knowing that Plaintiff and other CSRs performed start-up/log-in activities before their shifts and upon returning from their meal breaks, and that they closed/shut down their computer programs and systems after the end of their scheduled shifts, Defendant and their managers did not make any effort to stop or otherwise disallow this off-the-clock work and instead allowed and permitted it to happen.

30. Defendant possesses, controls and/or has access to information and electronic data that shows the times CSRs started up and logged into their computer systems and applications each day and the time they logged into their telephone systems, as well as the time at which they closed/shut down these systems and applications.

31. Defendant was able to track the amount of time that CSRs spent in connection with start-up/log-in and closing/shut-down activities; however, Defendant failed to pay CSRs for such time.

32. Defendant used its adherence and attendance policies against CSRs by disciplining CSRs if they were not logged into their phones and ready to handle calls by the start of their scheduled shift time.

33. These policies coerced CSRs into beginning the process of starting up and logging into their computers systems and applications, and reading company e-mails and instructions prior to their start of their scheduled shift time.

34. Defendant's policies and practices deprived CSRs of wages owed for the start-up/log-in activities and closing/shut-down activities described above.

35. Because CSRs often worked in excess of 40 hours in a workweek, Defendant's pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

36. Plaintiff regularly worked in excess of forty (40) hours in a workweek and was not paid for all hours worked in such weeks as a result of the violations alleged herein.

37. Defendant is a leader in its field, employs hundreds of CSRs, and knew or should have known that CSRs' time spent in connection with the preliminary start-up/log-in process is compensable under the FLSA, and Indiana Code § 22-2-5-1.

38. Defendant also failed to incorporate CSRs' non-base compensation (such as "Monthly Bonuses" and "Lending Division" bonuses) into their regular rates of pay, for purposes of calculating their hourly overtime rates.

39. As a result, there were many weeks throughout the statutory period in which Plaintiff and other CSRs received an hourly rate for overtime hours of less than "one and one-half times the[ir] regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee").

## COLLECTIVE ACTION ALLEGATIONS

40. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA individually on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition as necessary.

41. Excluded from the Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

42. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The Collective of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

43. The employment relationships between Defendant and every Collective member are the same and differ only in name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift, mid-shift, and post-shift time owed to each employee – do not vary substantially from Collective member to Collective member.

44. The key legal issues are also the same for every Collective member, to wit: uncompensated pre-shift, mid-shift, and post-shift time is compensable under the FLSA.

45. Plaintiff estimates that the Collective, including both current and former employees over the relevant period, will include hundreds of members. The precise number of Collective

members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ALLEGATIONS

46. Plaintiff brings her Indiana state law claims as a Rule 23 class action on her own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant in Indiana at any time within the two years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Rule 23 Indiana Class"). Plaintiff reserves the right to amend this definition as necessary.

47. Plaintiff brings this Rule 23 class action against Defendant to recover unpaid wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs pursuant to Indiana Code § 22-2-5-1.

48. The members of the Rule 23 class are so numerous that joinder of all class members in this case would be impractical. Plaintiff reasonably estimates that there are at least 100 hundred class members. The Rule 23 class members should be easy to identify from Defendant's payroll and personnel records.

49. There is a well-defined community of interest among the Rule 23 class members and common questions of law and fact predominate in this action over any questions affecting each individual class member.

50. Plaintiff's claims are typical of those of the Rule 23 class members in that they and all other class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. All of the class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay wages for all hours worked. Any lawsuit brought by an employee of Defendant would be identical to a suit brought by any

other employee for the same violations and separate litigation would cause a risk of inconsistent results.

51. Plaintiff was employed by Defendant in the same capacity as all of the class members. All class members were treated the same or similarly by management with respect to pay or lack thereof. This treatment included, but was not limited to, failure to pay wages for all hours worked. Thus, there are common questions of law and fact which are applicable to each and every one of the class members.

52. Plaintiff will fully and adequately protect the interests of the class members and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Plaintiff and her counsel do not have interests that are contrary to, or conflicting with, the interests of the class members.

53. Defendant's corporate-wide policies and practices affected all class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each class member. Plaintiff's claims arise from the same legal theories as all other class members. Therefore, this case will be more manageable and efficient as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case.

54. Plaintiff and the Rule 23 class members demand a trial by jury.

**COUNT I**
**(Brought Individually and on a Collective Basis Pursuant to 29 U.S.C. § 216(b))**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*.**

55. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

56. At all times relevant to this action, Defendant was an enterprise whose annual gross volume of sales made or business done exceeded $500,000.

57. At all times relevant to this action, Defendant was an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

58. In addition, Plaintiff and the FLSA Collective members were themselves engaged in commerce, and thus subject to individual coverage under the FLSA.

59. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

60. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and other Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

61. Plaintiff and other Collective members regularly worked in excess of 40 hours in a workweek.

62. At all times relevant to this action, Defendant suffered and permitted Plaintiff and other Collective members to perform pre-shift, mid-shift, and post-shift work as described herein, but failed to pay these employees the federally mandated overtime compensation for such time.

63. The uncompensated pre-shift, mid-shift, and post-shift work performed by Plaintiff and other Collective members was an essential part of their jobs and these activities and the time CSRs with these activities is not *de minimis*.

64. In workweeks where Plaintiff and other Collective members worked in excess of 40, the uncompensated pre-shift, mid-shift, and post-shift time should have been paid them at the federally mandated rate of 1.5 times each employee's regularly hourly wage.   29 U.S.C. § 207.

65. Defendant also failed to incorporate Plaintiff and the FLSA Collective members' non-base compensation (such as "Monthly Bonuses" and "Lending Division" bonuses) into their regular rates of pay, for purposes of calculating their hourly overtime rates.

66. As a result, there were many weeks throughout the statutory period in which Plaintiff and the FLSA Collective members received an hourly rate for overtime hours of less than "one and one-half times the[ir] regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee").

67. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its CSRs to complete the pre-shift, mid-shift, and post-shift activities and Defendant could have properly compensated Plaintiff and the Collective for such time, but did not.

68. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages, plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Brought Individually and as a Rule 23 Class)**
**(Breach of Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, et seq.)**
**[Failure to Pay Straight Time Wages]**

69. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

70. Indiana Code § 22-2-5-1 states in relevant part:

Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment.

Ind. Code § 22-2-5-1(b).

71. Defendant is an "employer" within the meaning of the Indiana Code.

72. Plaintiff and other members of the Rule 23 Indiana Class are "employees" within the meaning of the Indiana Code.

73. Defendant agreed to pay to pay Plaintiff and other members of the Rule 23 Indiana Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping systems in order to be paid, or not paid, for any time.

74. Defendant promulgated a formal (but ineffectual) policy of paying Plaintiff and other members of the Rule 23 Indiana Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

75. Defendant failed to pay Plaintiff and other members of the Rule 23 Indiana Class for all hours worked, contrary to the foregoing agreement and formal policy.

76. Plaintiff, individually and on behalf of the Rule 23 Indiana Class, demands

judgment against Defendant for total unpaid amounts, liquidated damages, pre-judgment interest, costs, reasonable attorney's fees and such other and further relief as may be just and proper pursuant to Ind. Code § 22-2-5-1.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Katrice Tipton, requests the following relief:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claim set forth herein (Count I);

b.  Determining that the state law claim may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure (Count II);

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.  Designating Plaintiff as a representative FLSA Collective undersigned counsel as class counsel for the same;

e.  Designating Plaintiff as a representative of the Indiana Rule 23 Class in this action and undersigned counsel as Class counsel for the same;

f.  Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.  Declaring Defendant violated Ind. Code § 22-2-5-1;

h.  Declaring Defendant's violations of the FLSA and Ind. Code § 22-2-5-1 were willful;

i.  Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and Rule 23 Class the full amount of damages and liquidated damages available by law;

j.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by the FLSA and Ind. Code § 22-2-5-1;

k.  Approving incentive awards to Plaintiff for serving as the representative of the FLSA Collective and Rule 23 Classes in this action;

  l. Awarding pre- and post-judgment interest to Plaintiff and the FLSA Collective and Rule 23 Class on these damages;

  m. Judgment for any and all civil penalties to which Plaintiff and the FLSA Collective and Rule 23 class members may be entitled; and

  n. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Katrice Tipton, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

RESPECTFULLY SUBMITTED,

Dated: February 23, 2021

By: /s Robert A. Hicks
Robert A. Hicks, Esq.
Macey Swanson Hicks & Sauer
445 N. Pennsylvania Street, Suite 401
Indianapolis, Indiana 46204
T: (317) 637-2345, Ext. 126
F: (317) 637-2369
rhicks@maceylaw.com

*Local Counsel for Plaintiff*

Jason T. Brown*
Nicholas Conlon*
Lotus Cannon*
Brown, LLC
111 Town Square Pl Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com
*Application for Admission Pro Hac Vice Forthcoming

*Lead Counsel for Plaintiff*